IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

CARLOS H. GARCIA, #M41479,        )
                                  )
    Plaintiff,                    )
                                  )
v.                                )   Case No. 18-cv-1001-RJD
                                  )
SANDRA FUNK, MIKE FUNK, JEFFREY   )
MOLENHOUR, and NICK LAMB,         )
                                  )
    Defendants.                   )

**ORDER**

**DALY, Magistrate Judge:**

This matter comes before the Court on Defendants' Motion for Summary Judgment and Memorandum of Law (Doc. 55). Plaintiff filed a Response (Doc. 66). As explained further, Defendants' Motion is GRANTED IN PART and DENIED IN PART.

**Introduction**

Plaintiff is an inmate within the Illinois Department of Corrections ("IDOC"). He filed this suit pursuant to 42 U.S.C. §1983, alleging that his constitutional rights were violated at Lawrence Correctional Center ("Lawrence"). Following a threshold review pursuant to 28 U.S.C. §1915A, Plaintiff's case proceeded on the following claims:

    Count One:    First Amendment claim against Defendants Lamb, Molenhour, and Michael Funk for placing Plaintiff in a dangerous housing situation and failing to implement corrective measures to protect Plaintiff after he was raped because he is gay.

    Count Two:    Eighth Amendment claim against Defendants Sandra Funk, Michael Funk, and Molenhour for maintaining a practice of not using screening information to protect inmates at a high risk of sexual assault from inmates who are high risk for being sexually abusive, and for placing Plaintiff in a dangerous housing situation.

>   Count Three: Fourteenth Amendment Equal Protection claim against Defendants Lamb, Molenhour, and Michael Funk for placing Plaintiff in a dangerous housing situation and failing to implement corrective measures to protect Plaintiff after he was raped because he is gay.

Defendants filed the instant motion, contending there is no genuine issue of material fact regarding whether Defendants violated Plaintiff's constitutional rights and summary judgment should be granted in their favor.

## Factual Background

The following facts are taken from the record and presented in the light most favorable to Plaintiff, as the non-moving party. All reasonable inferences are drawn in his favor.

Plaintiff is a member of the LGBTQ community (Doc. 55-1, p. 8). On March 11, 2015 he transferred from Pinckneyville Correctional Center to Lawrence Correctional Center (Doc. 55-2, p. 2). At Pinckneyville, a member of the Latin Folks (a security threat group, or "STG") wanted Plaintiff to stab a member of the Kings, another STG (Doc. 55-1, p. 4; Doc. 66, p. 13). Plaintiff refused and asked to be placed in protective custody (*Id*. pp. 4, 5). Internal Affairs transferred Plaintiff to Lawrence (*Id.*). Within a few days of arriving at Lawrence, Plaintiff spoke with Defendant Molenhour (*Id*. p. 5). Plaintiff asked to be placed in protective custody (*Id*.). Molenhour replied, "Well, no one has ever jumped on you and if anybody does, let us know" (*Id*.). Plaintiff also told Molenhour that he [Plaintiff] is gay (*Id*. p. 8).

Approximately eighteen months later, Plaintiff told Molenhour that a member of the Latin Folks had transferred from Pinckneyville to Lawrence (*Id*. p. 5). Plaintiff told Molenhour "he's going to see me and he is going to tell all of the Latin Folks, and it's going to be the same thing again" (*Id*.). Plaintiff again asked Molenhour to be placed in protective custody (*Id.* p. 9).

Plaintiff believes that Molenhour arranged for the Latin Folks member to be moved to another area of the prison, but Plaintiff still saw the Latin Folks member when moving to and from school and healthcare (*Id*. p. 5).

Plaintiff's counseling summary reflects that Plaintiff's brother called Lawrence and spoke with an administrative assistant on July 24, 2017 (Doc. 66, p. 19). The administrative assistant noted that Plaintiff's brother expressed concern for Plaintiff and "information was submitted to Mental Health and Executive Staff" (*Id*.).

On July 29, 2017, Plaintiff submitted a grievance to Counselor Garrett at Lawrence (Doc. 55-1, p. 6). Within the grievance, Plaintiff told Counselor Garrett "everything that happened at Pinckneyville with the Latin Folks….he said he was going to talk to IA, and IA told him to tell me that I was going to get transferred, to not worry about it" (*Id*.). Plaintiff did not mention his sexuality in the July 29, 2017 grievance (Doc. 66, pp. 15-16). Plaintiff's cumulative counseling summary contains an entry from Counselor Garrett dated July 31, 2017 in which he states he forwarded two emergency grievances written by Plaintiff to the Warden at Lawrence (*Id*. p. 17). Plaintiff tried to talk to Warden Nick Lamb one day while Lamb was touring the prison, but Lamb said "he had to go" (*Id*. p. 10).

Plaintiff became cellmates with Samer Hernandez at the beginning of August 2017 (Doc. 55-1, pp. 3, 4). Immediately before Hernandez became his cellmate, Plaintiff was in a one-man cell (*Id*. p. 4). A lieutenant (who knew about Plaintiff's history with the Latin Folks and Kings) told Plaintiff that he was going to have a cellmate (*Id*.). Plaintiff refused to move (*Id*.). Prison guards handcuffed him and made him move to the cell with Hernandez (*Id*.). Hernandez was a member of the Latin Folks (*Id*. p. 3). Hernandez immediately began asking Plaintiff about his background and history within the IDOC (*Id*. p. 4). Plaintiff told Hernandez that he was from

Texas and this was his first "bid" (meaning his first time in prison) (*Id*.).

Plaintiff and Hernandez had no altercations until August 19, 2017, when Hernandez received a written message from another member of the Latin Folks (*Id*. pp. 3, 4; Doc. 66, p. 6). Later that day, Hernandez raped Plaintiff (*Id*. p. 3). Immediately before raping Plaintiff, Hernandez accused Plaintiff of snitching on members of the Latin Folks (*Id*.). After the rape, Plaintiff activated the "panic button" in his cell (*Id*. p. 6). Hernandez told Plaintiff "you better not [say anything] because we are still going to get you" (*Id*. p. 3). No one responded to Plaintiff's panic alert (*Id*. p. 6). Eventually, a correctional officer walked by Plaintiff's cell and Plaintiff told the officer he wanted to go on suicide watch (*Id*. p. 6).

Prison staff then handcuffed Plaintiff and took him to healthcare (*Id*. p. 7). Defendant Molenhour spoke to Plaintiff and "took down what happened" (*Id*.). Prison staff transported Plaintiff to a local hospital where he was examined (*Id*.). Plaintiff returned to Lawrence in the early morning hours of August 20, 2017 (*Id*.). He told a mental health care worker that he wanted to be placed in protective custody (*Id*.). For the next three days, Plaintiff was on suicide watch and refused to eat (*Id*. p. 10). He thought the prison staff was going to try to poison him (*Id*. p. 11). Plaintiff transferred to Menard Correctional Center on August 23, 2017 (Doc. 55-2, p. 1; Doc. 55-1, p.6).

Plaintiff has never had any type of interaction with Defendant Mike Funk (*Id*. p. 9). Plaintiff received a letter from the John Howard Association stating that Mike Funk was the PREA ("Prison Rape Elimination Act") coordinator at Lawrence in 2017 (Doc. 66, p. 33). However, Mike Funk presented a declaration to the Court that states he was the Manager of the Employment Service Division for IDOC from June 2016-December 2018 (Doc. 55-7). He was the Agency PREA Coordinator from November 2015-May 2016 (*Id*.).

Page **4** of **12**

Sandra Funk was the Deputy Chief of Operations for IDOC from February 2017-October 2017 (Doc. 55-3). Prior to that role, she was the Deputy Director of the Central Region for IDOC (*Id.*). She avers that "the facility where an offender is housed is responsible for reviewing an offender's request for placement in protective custody" and that she "did not review any requests for [Plaintiff] regarding placement or requests to be placed in protective custody" (*Id.*). She also avers that "all offenders are reviewed for safety and security risk when they arrive IDOC (sic) by the facility in which they will be housed at" (*Id.*).

Jeffrey Molenhour was an Internal Affairs Investigator at Lawrence in 2017 (Doc. 55-6). Prior to holding that position, he was an Adjustment Committee Officer (*Id.*). He avers that "as an Internal Affairs Investigator I was not responsible for placing an inmate in protective custody. If a request was made by an inmate to be placed in protective custody the request was sent to the Intel Unit at Lawrence for review and for a decision of placement" (*Id.*).

## Summary Judgment Standard

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at

248). In determining a summary judgment motion, the Court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

**Count I: First Amendment violation**

Plaintiff claims that Defendants Michael Funk, Molenhour, and Lamb retaliated against Plaintiff for being openly gay by placing him in dangerous housing situations and/or denying him protective custody both before and after he was raped. To establish that his First Amendment rights were violated, Plaintiff must show that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Novoselsky v. Brown*, 822 F.3d 342, 354 (7th Cir. 2016) (internal citations omitted).

Plaintiff must be able to point to a connection between his speech and the alleged retaliation. *Gekas v. Vasiliades*, 814 F.3d 890, 895-96 (7th Cir. 2016). To survive summary judgment, Plaintiff must establish a prima facie case for retaliation by producing "sufficient evidence to show that his purportedly protected speech was at least a motivating factor in the defendants' alleged retaliation." *Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012). The connection must be based on more than Plaintiff's speculation, but can be based on either circumstantial or direct evidence. *Id*. Circumstantial evidence "may include suspicious timing, ambiguous oral or written statements, or behavior towards or comments directed at [members] of the protected group." *Id*. at 966.

Defendant Molenhour avers that he was not responsible for placing inmates in protective custody. If an inmate requested to be placed in protective custody, the request was forwarded to

the Intel Unit for review. Defendant Molenhour denies that Plaintiff ever asked him to be placed in protective custody. To view the evidence in the light most favorable to Plaintiff, the Court accepts Plaintiff's testimony (that he told Defendant Molenhour he was gay and asked to be placed in protective custody) as true. But even if Defendant Molenhour failed to forward Plaintiff's request to be placed in protective custody to the Intel Unit, there is no evidence to support an inference that Defendant Molenhour was motivated, even in part, because of Plaintiff's sexuality. Accordingly, Plaintiff fails to establish a *prima facie* case of retaliation because there is no evidence to suggest that his speech motivated Defendant Molenhour to deprive Plaintiff of his "federally protected" rights. *See*, *e.g.*, *Isabell v. Trustees of Indiana Univ.*, 432 F.Supp.3d 786, 796 (N.D. Ind. 2020). Therefore, summary judgment is appropriate in favor of Defendant Molenhour on Count I. *Id*.

With regard to the remaining Defendants in Count I, Plaintiff's claim against them fails unless he can establish that Defendants "knew of the protected speech." *McGreal v. Village of Orland Park*, 850 F.3d 308, 313 (7th Cir. 2017). Plaintiff has never had any type of verbal or written interaction with Michael Funk, and there is no evidence from which the Court can infer that Michael Funk was aware that Plaintiff is gay. Consequently, Defendant Michael Funk is also entitled to summary judgment on Count I.

Similarly, no evidence suggests that Defendant Lamb was aware Plaintiff was gay. According to Plaintiff's counseling summary, Plaintiff submitted two emergency grievances that were forwarded to Defendant Lamb in July 2017 (prior to the rape). Plaintiff's July 29, 2017 grievance does not mention his sexuality. Doc. 66, pp. 15, 16. The other emergency grievance from July 2017 has not been presented to the Court and Plaintiff has not provided the Court with any information about what he wrote in the grievance. It appears that Plaintiff's brother called

and left a message for prison administration in July 2017 regarding Plaintiff's safety, but the Court has no reason to infer Plaintiff's brother informed Defendant Lamb of Plaintiff's sexuality. Plaintiff had no other substantive interactions with Defendant Lamb. Accordingly, summary judgment is granted in favor of Defendant Lamb on Count I.

**Count II: Eighth Amendment violation**

Plaintiff alleges that Sandra Funk, Mike Funk, and Molenhour failed to protect him from a dangerous housing situation and maintained a practice of failing to properly screen inmates for sexual assault risks. The Eighth Amendment requires prison staff "to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 833 (1994). In order to succeed on an Eighth Amendment failure to protect claim against a prison official, the plaintiff must show: 1) "that he was incarcerated under conditions posing a substantial risk of serious harm"; and 2) that [the prison official] acted with deliberate indifference to that risk." *Santiago v. Walls*, 599 F.3d 749, 758 (7th Cir. 2010) (quoting *Farmer* at 833).

In order to establish the first element, Plaintiff must show that he "experienced, or was exposed to, a serious harm" and that there was a substantial risk beforehand that serious harm might actually occur. *Brown v. Budz*, 398 F.3d 904, 910 (7th Cir. 2005). The second element requires an inquiry into a defendant prison official's state of mind. *Farmer*, 511 U.S. at 847. A prison official may be held liable only if he knows an inmate faces a substantial risk of serious harm and "disregards that risk by failing to take reasonable measures to abate it." *Id.* Thus, in order for Plaintiff to prevail on his failure to protect claim, he must establish that Defendants had actual knowledge of an impending harm, easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from each Defendant's failure to prevent it. *Santiago*, 599 F.3d at 758. "In cases involving inmate-on-inmate violence, 'a prisoner normally provides actual

knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety'." *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996).

No evidence suggests that either Michael Funk or Sandra Funk were aware of the risks posed to Plaintiff by his sexuality and history with the Latin Folks. Plaintiff did not have any interactions with them nor did he correspond to them. Moreover, no evidence suggests that either Michael Funk or Sandra Funk were responsible for maintaining a practice of failing to properly screen inmates for sexual assault risks. They are therefore entitled to summary judgment in Count II.

Viewing the evidence in the light most favorable to Plaintiff, it appears that Plaintiff informed Defendant Molenhour in 2015 that he was gay and was in danger of being assaulted by a member of the Latin Folks STG. Molenhour told Plaintiff "well, no one has ever jumped on you and if anybody does, let us know." In 2016, Plaintiff told Molenhour that he saw a member of the Latin Folks at Lawrence, and this individual would reveal Plaintiff's location to other members of the Latin Folks organization. Plaintiff asked Molenhour in 2015 and in 2016 to place him in protective custody (though Molenhour denies that Plaintiff ever made this request). Ultimately, Plaintiff was raped and verbally threatened by Hernandez, a member of the Latin Folks STG. None of the evidence presented indicates that Molenhour knew Plaintiff was assigned to share a cell with Hernandez, or that Hernandez was a member of the STG. However, as the Seventh Circuit has explained:

> ….picture an inmate with a cobra in his cell. If the prison officials "know that there is a cobra there or at least that there is a high probability of a cobra there, and do nothing, that is deliberate indifference. The precise identity of the threat, be it a cobra or fellow inmate, is irrelevant. A prison official "cannot escape liability by showing that he did not know that a plaintiff was especially likely to be assaulted by the specific prisoner who eventually committed

> the assault." On the other hand, as the vagueness of a threat increases, the likelihood of "actual knowledge of impending harm" decreases. So, too, does the official's ability to respond. The ultimate measure of the adequacy of the response is therefore reasonableness in light of the surrounding circumstances."

*Dale v. Poston*, 548 F.3d 563, 570 (7th Cir. 2008).

Because Molenhour denies that Plaintiff asked him to be placed in protective custody, the Court cannot evaluate the reasonableness of Molenhour's response to that request, other than to infer Molenhour did nothing. Plaintiff testified that he informed Molenhour that there was a specific Latin Folks member at Lawrence who would, if he saw Plaintiff, disclose Plaintiff's location to other Latin Folks. Accepting Plaintiff's testimony as true, Molenhour had actual knowledge of a specific threat to Plaintiff's safety. Plaintiff believes that Molenhour moved the Latin Folks member to another area of the prison where he could still see Plaintiff. Whether Molenhour did nothing or moved the Latin Folks member to an area of the prison where he would still see Plaintiff, the Court cannot find that Molenhour met his burden on summary judgment. A genuine dispute of material fact exists regarding Plaintiff's failure to protect claim against Defendant Molenhour.

**Count III: Fourteenth Amendment violation**

To establish that he was discriminated against in violation of the Equal Protection Clause, Plaintiff must establish the following: 1) he "is a member of a protected class"; 2) he is "otherwise similarly situated to members of the unprotected class"; and 3) he "was treated differently from members of the unprotected class." *McNabola v. Chicago Transit Auth.*, 10 F.3d 501, 513 (7th Cir. 1993) (quoting *McMillian v. Svetanoff*, 878 F.2d 186, 189 (7th Cir. 1989)).

Plaintiff alleges that Defendants Lamb, Molenhour, and Michael Funk violated Plaintiff's rights under the Equal Protection Clause. Plaintiff is a member of the LGTBQ community, and

the Equal Protection Clause protects against discrimination based on sexual orientation. *Hughes v. Farris*, 809 F.3d 330, 334 (7th Cir. 2015) (*citing Baskin v. Bogan*, 766 F.3d 648, 654-55 (7th Cir. 2014)). However, no evidence in the record suggests that Plaintiff was "otherwise similarly situated" to inmates at Lawrence who were not members of the LGTBQ community, nor does the record contain any evidence that Plaintiff was treated differently than inmates at Lawrence who were not members of the LGTBQ community. Consequently, Defendants are entitled to summary judgment on Count III.

**Qualified Immunity**

Defendants argue that they are entitled to qualified immunity on Plaintiff's claims. Under the doctrine of qualified immunity, a government official is not liable for monetary damages in a civil case "unless… (1) the official violated a statutory or constitutional right, and (2) that right was "clearly established at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011), (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). A "clearly established" right is one that "every 'reasonable official' would know he was violating." *Id*. at 741.

Because the Court has concluded that the evidence does not create a genuine issue of material fact as to whether Defendants Lamb, Michael Funk, and Sandra Funk violated Plaintiff's constitutional rights, the Court will not address their potential qualified immunity. Defendant Molenhour argues that he is entitled to qualified immunity. At the time of the events in question, it was clearly established that a prison official who is aware of a serious risk of substantial harm to an inmate is required by the Eighth Amendment to take steps to reduce that risk. *Farmer*, 511 U.S. at 847. Defendant Molenhour is not entitled to summary judgment on his qualified immunity defense.

## Conclusion

Based on the foregoing, Defendants' Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.  The Clerk of Court shall enter judgment in favor of Defendants Michael Funk, Sandra Funk, and Nicholas Lamb at the close of this case. Plaintiff shall proceed on his Eighth Amendment claim (Count II) against Molenhour.

**IT IS SO ORDERED.**

**DATED:   September 29, 2020**

*s/ Reona J. Daly*
**Hon. Reona J. Daly
United States Magistrate Judge**